Curia, per

O’Neall, J.
This Court is satisfied with, the instruction given by the presiding Judge, that “there cannot be such a thing as a feme sole trader in boating:” The other instruction that she might be liable in respect of the boat being her separate estate, is more doubtful : but as that was in favor of the plaintiff, and as the jury have found against the fact which was the predicate of that instruction, and as we think their verdict, in that behalf, ought not to be disturbed, it is unnecessary now to give a definite opinion on that point.
I will, in as few words as possible, assign the reasons why we think there cannot be a ferae sole trader in boating. The utmost latitude to which this extraordinary privilege can be extended, would be to allow it to attach to other business besides merchandise, which females can and usually do carry on without the aid of their husbands. Generally speaking, the custom ought to be strictly construed ; and there is little ^reason why we should give it a wider extension here than it had in London.
The Act of 1744, sec. 10, (P. L 190,)(a) recognized the existence of feme sole traders, and fully justified the Court in applying the custom, as *34 was dona in 1798, by the constitutional court, to the case of Newbiggin vs. Pillans and wife, (2 Bay, 164.) That case arose out of buying and selling merchandize. The Court, in that case, expressly recognize the custom, as stated in Mr. Turnbull’s argument, to be that “ where a feme trades by herself in one trade with which her husband doth not inter-meddle, and buys and sells in that trade, then the feme shall be sued, and the husband named only for conformity and if judgment be given against him, execution shall be only against the feme.” So in Surtell ads. Brailsford, (2 Bay, 333,) the Judges maintained the same doctrine, when they said that “ the defendant kept a shop and carried on business in her own name, apart from her husband, (if she ever had one) and in which he never intermeddled for the space of ten or twelve years, which constituted her a sole dealer at common law.” These two cases constituted the guide to the profession of the law: and it was, I think, the generally received opinion, that a feme covert could not acquire the character of a sole trader in any other way than by making out the proof of the facts required by the custom, until the cases of McGrath, vs. Robison, (1 Eq. Rep. 445,) and Miller vs. Tollison, (Harp. Eq. Rep. 145.) The first of these cases has been, by Judge Johnson, in the case of McDaniel vs. Cornwell, shown to be not inconsistent with the customs. The case of Miller vs. Tollison extended the custom to the business of tavern keeping, and it may be sustained on the ground that it is a business that females may and do carry on without the aid of their husbands ; but I confess that I should be little disposed to take that view, unless constrained so to do by the case to which I have referred.(a) The Acts of 1823 and 1824, (pages 35 and 23)(b) have been the fruitful source of many errors in this behalf. It was supposed that they had introduced a new mode of constituting feme coverts sole traders, when, in point of faet, they only recognized the custom, and imposed additional restrictions on its allowance. The case of McDaniel & Cornwell, (1 Hill 29,) corrected these errors By *it, it was held that the privilege of a feme sole trader arose out of the business of buying and selling merchandize, carried on by a feme covert without any intermeddling therewith by the husband, after a compliance, on her part, with the requisitions of the Acts of’23 and ’24.
This brief review of the law of this State fully sustains the position that a feme covert could not be made a feme sole carrier, under the custom, or under the Acts of the Legislature. If we were, however, free to reason about it, as an original proposition, we must come to the same conclusion. It is utterly inconsistent with the duties of the wife to the husband and to her children, that she should engage in a business which would deprive them of her society and assistance, which would send her out into the busy world to mingle with all classes, and lose that distinctive modesty of character which makes her at home and abroad the ornament and the directress of society. But it is argued that the business of a common carrier is such as would make the person engaged in it a trader within the meaning of the English statutes of bankruptcy. This may be so, and still it will not help the plaintiff. For the term *35 trader, when applied to a feme covert, is used in a restricted sense. Its meaning is pointed out by the custom of London, which , has been allowed in this State. According to that, it does not reach beyond buying and selling merchandize.
Gregg, for the motion. De Saussure and Black, contra.
The motion is dismissed :
Richardson, Earle, Butler, JJ., concurred: Evans and Gantt, JJ. absent.

 3 Stat. 420. See also Act of 1712. 2 Stat. 593. An.

а) 6 Stat. 212. Id. 236 § 2. An.

 See Dial v. Kneuffer, 3 Rich. 78. An.